In the Matter of DAVID LOUIS DELMAN (Also Known as DAVID L. DELMAN), an Attorney, Respondent.

First Department, December 13, 1935.

*Archie O. Dawson* of counsel [*Morris L. Heath* with him on the brief; *Einar Chrystie*, attorney], for the petitioner.

*John G. Dyer* of counsel [*Dyer & Kammerer*, attorneys], for the respondent.

MARTIN, P. J. The respondent, who was admitted to the bar on January 17, 1921, at a term of the Appellate Division of the Supreme Court, First Department, has been found guilty of professional misconduct. He is charged (1) with having made a false answer and affidavit in an action brought against him by one Dr. Rubin, a client, to the effect that there was a specific agreement with his client for a fifty per cent contingent fee in the event that a recovery was obtained by litigation and for a thirty per cent contingent fee in the event of a settlement; (2) with having appropriated to his own use the proceeds of a judgment obtained and collected amounting to $3,114.16, less $1,500, which the respondent remitted to his client, knowing that the amount of his fee was in dispute, and (3) that he placed himself in a position where he could not pay the sum of $636.75, the amount of the judgment obtained against him by his client in the City Court, Kings county.

The respondent insisted at the hearings in this proceeding that there was in fact such agreement. That was the issue before the referee. The referee has decided adversely, holding it probable that while the client did inquire as to the possible expense and did make some casual reference to his usual charges in contingent cases, no contract was made at that time. This conclusion is based partly upon the fact that no reference to a contingent

agreement is made in the correspondence between the respondent and his client subsequent to the controversy over the amount of the respondent's fee. In the record there is a letter which confirms the conclusion of the referee, namely, letter of May 6, 1932, wherein the respondent states: " You told me that a third would amply compensate me for my services. I disagreed, disagree and shall disagree until eternity and I took about 43 per cent. I did not think that you would raise such a bother about a paltry few dollars after what has been accomplished by me in the case. If you do not blush to think of your actions subsequent to the victory, then I blush vicariously for you. The difference between your estimate and mine is about ten per cent."

In the above letter we find no claim on the part of the respondent that there was an agreement for fifty per cent. On the contrary, a reference is made to the " estimate " of the respondent that forty-three per cent would be reasonable compensation for the services rendered, and a reference to the " estimate " of the client as contrasted to the " estimate " of the respondent. The compelling inference is that had there been a definite fifty per cent agreement, the respondent would have referred to that agreement and directed the attention of his client to the fact that he had not exacted the full amount to which he was entitled.

The respondent, on the other hand, claims that he did not refer to the fifty per cent agreement in said correspondence because it was written for the purpose only of convincing a brother of his client that the charge was a reasonable one, without respect to the specific agreement. This contention is not supported by the weight of the probabilities. The contention of the respondent is negatived further by his letter to his client of March 23, 1932, where he stated: " I am enclosing herewith my check for $1,500 in connection with your imbroglio with the Wall Street harpies. If you have the slightest misgivings as to the amount of your check, I shall be very pleased to talk it over with you any afternoon." This letter was written, according to the respondent's claim, before he knew that the brother of his client had any connection with the matter. It is inconsistent with a definite fifty per cent agreement.

If all the other evidence in the case be disregarded, the aforesaid letters are in themselves sufficient to sustain the finding of the referee. The tenor of said letters creates the impression that they were written in a spirit of complaint directed personally at the client of the respondent, with whom the latter had been on friendly terms for a long time, and because the respondent felt that his charge was reasonable in view of the successful result accomplished in this case, whereas fifty-one other similar actions against the same defend-

ant not prosecuted by the respondent had terminated in judgments for the defendant. If all the other evidence in the case be regarded as evenly balanced, the correspondence is sufficient to negative the existence of any specific agreement, as found as matter of fact by a jury after a trial in the City Court. Apparently there had been some discussion in which the respondent mentioned that his fee in a case where the compensation was entirely contingent on success would be fifty per cent of the recovery, but no definite agreement with respect to compensation was made. The respondent deducted what he thought was a reasonable charge and, when this was questioned, he sought to justify it on that basis and thus dissuade his client from taking legal action. Failing in this, the respondent made the false claim that there was a fifty per cent agreement.

The fact is not disputed that the respondent, knowing that his right to retain the amount claimed by him was at issue, used the money and was financially unable to pay the judgment recovered against him, although there is no doubt as to his willingness to do so, which he later did when he obtained the money.

The respondent should be suspended for six months, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

MERRELL, McAvoy, O'MALLEY and TOWNLEY, JJ., concur.

Respondent suspended for six months.